# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CV-24348-UNGARO/LOUIS

SHONTEAKA MOORE,

      Plaintiff,

vs.

ANDREW SAUL,
Commissioner of Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS MATTER** is before the Court on Plaintiff Shonteaka Moore's Motion for Summary Judgement (ECF No. 21) and Defendant Andrew Saul's, Commissioner of Social Security Administration, Motion for Summary Judgement (ECF No. 23). These Motions were referred to the undersigned United States Magistrate Judge by the Honorable Ursula Ungaro, United States District Judge, for a Report and Recommendation (ECF No. 6). Upon consideration of the briefing and the record, the undersigned **RECOMMENDS** that Plaintiff's Motion (ECF No. 21) be **DENIED** and Defendant's Motion (ECF No. 23) be **GRANTED**.

## I.    PROCEDURAL BACKGROUND

This case involves Plaintiff's application for supplemental security income ("SSI") and Disability Insurance Benefits ("DIB"). On September 25, 2013, Plaintiff applied for benefits alleging a disability onset date of August 9, 2011 (R. 15, 18). Plaintiff claimed that she suffers from multiple severe impairments including Human Immunodeficiency Virus ("HIV"), Post-Traumatic Stress Disorder ("PTSD"), and Major Depressive Disorder (R. 18). The Social Security

Administration ("SSA") denied Plaintiff's application initially and on appeal. Following these denials, Plaintiff sought a hearing before an Administrative Law Judge ("ALJ"), which was held on June 9, 2016 (R. 50, 52). On July 22, 2016, the ALJ issued her unfavorable decision finding Plaintiff was not disabled. Plaintiff timely requested review of the ALJ's decision to the Appeals Council who remanded the case with instructions to further evaluate Plaintiff's mental impairments as required in the relevant Listings (R. 15).

Upon remand, a second hearing was held in front of ALJ Carol Pennock on February 1, 2018 (R. 103). During this hearing, Plaintiff was represented by council and both Plaintiff and a Vocational Expert ("VE") testified. On October 31, 2018, ALJ Pennock issued her decision denying Plaintiff's application (R. 25). Subsequently, Plaintiff requested review of the ALJ's decision to the Appeals Council. On August 23, 2019, the Appeals Council denied Plaintiff's request for review thus rendering the ALJ's decision as the final decision. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's decision.

## II.    STANDARD OF REVIEW

### 1.  Legal Principles

A district court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 Fed. App'x. 861, 862 (11th Cir. 2011). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id.* This restrictive standard of review set out above, however, applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### 2. Regulatory Framework

An individual claiming Social Security disability benefits must prove that she is disabled. For an SSI claim, a clamant becomes eligible in the first month where she is both disabled and has filed an SSI application. 20 C.F.R. § 416.330. For a DIB claim, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she was insured. 20 C.F.R. § 416(i)(3). Because Plaintiff's last insured date was December 31, 2012, her DIB appeal requires a showing of disability on or before that date. Conversely, because Plaintiff applied for disability benefits on September 25, 2013, her SSI appeal requires a showing of disability between the date and the date of the ALJ's decision on October 31, 2018.

A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from

anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999). The Social Security regulations outline a five-step sequential evaluation process for deciding whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite her impairments; and (5) whether she can perform other work found in the national economy. *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

## III.   THE RECORD

### 1.   Summary of Relevant Medical Evidence

#### a.   Ted A. Williams, Psy. D.

On December 19, 2012, Plaintiff was referred to Dr. Ted A. Williams for a psychological evaluation in relation to Plaintiff's request that an organization assist her in obtaining job training and employment (R. 1438). Dr. Williams examined Plaintiff on this single occasion. Plaintiff's cognitive functions were intact and showed good short-term memory; and no deficits in remote memory were noted. Plaintiff displayed "positive personality traits such as a cooperative nature, good verbal communication skills, respectful, and apparently sincere presentation of self (R. 1443). Plaintiff had borderline intellectual functioning, as she experienced difficulties in problem solving, but not severe enough to be consistent with a learning disability (R. 1444).

### b.  Dr. Lourdes Illa-Sanchez

Plaintiff was treated by Doctor Lourdes Illa-Sanchez at Jackson Health System from 2010 to 2014. Dr. Illa-Sanchez treated Plaintiff for her psychological impairments of major depressive disorder, anxiety, and PTSD.

Relevant to this appeal, on February 8, 2011, Dr. Illa-Sanchez completed a psychiatric and psychosocial evaluation form regarding Plaintiff's mental and emotional impairments in relation to her application for Social Security benefits (R. 1339). Dr. Illa-Sanchez indicated that Plaintiff suffers from major depression disorder, PTSD, and panic disorder (R. 1339). She reported that Plaintiff was expected to miss more than four days per month of work due to her impairments (R. 1341). In her evaluation Dr. Illa-Sanchez noted that Plaintiff was only slightly limited in the majority of activities of daily living, including grooming, personal hygiene, maintenance, shopping, cooking, paying bills, and using public transportations; and moderately limited in the activities of using the telephone, planning daily activities, and initiating and participating in activities independent of supervision or direction (R. 1341). Plaintiff also experienced moderate difficulties in cooperating with coworkers, responding to those in authority, establishing interpersonal relationships, and holding a job (R. 1342). Plaintiff experiences only moderate difficulties in getting along with friends, family, and neighbors, and avoiding altercations (*id.*). Dr. Illa-Sanchez found that Plaintiff suffered marked limitation only in the area of concentration; she had moderate difficulties in persistence in tasks, ability to complete tasks in a timely manner, pace, and ability to assume increased mental demands associated with competitive work (*id.*).

In September 2013, Dr. Illa-Sanchez examined Plaintiff upon complaints that she had been very anxious and felt depressed (R. 1926). Plaintiff denied experiencing any hallucinations, delusions, or perceptual disturbances (*id.*). Plaintiff appeared goal-oriented and indicated that she

wanted to "get better" for her children (*id.*). Plaintiff reported she was diagnosed with HIV in 2000 and prescribed antiretroviral medication (*id.*). Dr. Illa-Sanchez indicated that cognitive testing revealed some impairment in cognitive functioning, however, "[t]hese impairments are not interfering with every day functioning." (*id.*).

A month later, Plaintiff returned for treatment reporting intermittent depressed mood, poor sleep, and decreased interest (R. 1974). She denied suicidal thoughts or symptoms of psychosis (*id.*). She denied any other major medical problems and at the time was managing her HIV (*id.*). Dr. Illa-Sanchez noted that Plaintiff appeared calm, pleasant, cooperative, and displayed good judgment and concentration (R. 1975). Plaintiff reported having two children and attending college to become a paralegal.

In December 2013, Plaintiff returned to Dr. Illa-Sanchez and reported that she continued experiencing panic attacks and intermittent depressed moods, however, her symptoms had improved from the previous month (R. 1962). Plaintiff continued to attend classes and care for her children despite her symptoms (*id.*).

On June 19, 2014, Dr. Illa-Sanchez completed a second psychiatric and psychosocial evaluation. In her evaluation, Dr. Illa-Sanchez diagnosed Plaintiff with major depressive disorder and recurrent moderate panic disorder (R. 2221). At that time, Dr. Illa-Sanchez estimated that Plaintiff would be absent from work as a result of her impairments about two days per month (R. 2223). Dr. Illa-Sanchez indicated that Plaintiff had no limitations in the activities of daily living (*id.*); she also noted that Plaintiff did not experience any marked limitations in the area of maintaining social functioning or task performance and concentration (R. 2223-24). Dr. Illa-Sanchez indicated that Plaintiff's condition does not result in a complete inability to function outside the area of the home (R. 2232).

6

### c.   Edwin Bosa-Osario, M.D.

Dr. Edwin Bosa-Osario examined and treated Plaintiff from December 2013 through March 2014 for viral diseases (R. 2208). Dr. Bosa-Osario noted that Plaintiff had a history of high-risk human papillomavirus ("HPV"), although no malignant lesions or growths were detected (R. 2209). Dr. Bosa-Osario indicated that Plaintiff was not taking her HIV medications as prescribed, however, her "immune status has been robust even without meds" (R. 2207). Plaintiff did not experience fatigue, fever, weight loss, headaches, mouth sores, or swollen lymph nodes (*id*.).

### d.   Vicki Ann Samuel, M.D.

On March 27, 2013, Dr. Vicki Ann Samuel, M.D., evaluated Plaintiff and completed a psychiatric and psychosocial evaluation (R. 1424). Dr. Samuel is a one-time examiner. Dr. Samuel diagnosed Plaintiff with bipolar disorder, panic attacks, anxiety disorders, and PTSD (R. 1424). Dr. Samuel indicated that Plaintiff presented as cooperative and her thought process was goal oriented with no evidence of delusional thought disorder (*id.*). Dr. Samuel found that Plaintiff was moderately limited in most activities of daily living, including personal hygiene, maintenance, using public transportation, paying bills, and cleaning (R. 1426). Dr. Samuel evaluated Plaintiff as markedly limited only in shopping and planning daily activities (*id.*). Dr. Samuel also found that Plaintiff was moderately limited in the areas of participating in activities without supervision; and was extremely limited in the areas of establishing interpersonal relationships, avoiding altercations, and interacting and actively participating in group activities (*id*).

### 2.  Plaintiff's Testimony

Plaintiff was 33 years old at the time of the remand hearing, has a high school education and past relevant work as a babysitter (R. 118, 124). Plaintiff has two children who she takes care of with the assistance of her siblings and her son's godmother (R. 124). At the time of the hearing,

Plaintiff resided at Riverside Ministry's halfway house where she performed chores and other housework (R. 128).

When Plaintiff was sixteen years old, she was diagnosed with HIV (R. 113). Plaintiff claims she suffers from anxiety attacks which cause her to become lightheaded, make her heart pound, and make her feel out of breath (R. 119, 125). Plaintiff states that these anxiety attacks are triggered by her feeling pressure (R. 126). Plaintiff reports difficulty in maintaining concentration when performing tasks due to negative thoughts of her past (R. 129). Plaintiff was undergoing court-ordered mental health treatment at the time of the hearing. *Id.*

In 2012, Plaintiff reported self-employment income that was generated by babysitting children (R. 122). After that, Plaintiff worked at a grocery store, but she quit because she was very anxious in that position (R. 199). Plaintiff then worked as a security guard but was fired due to a verbal altercation with her coworker (R. 120).

At the time of the second hearing, Plaintiff was on probation after being released from federal custody in connection to convictions for theft of government funds and aggravated identity theft (R. 106, 126).

### 3. Vocational Expert Testimony

Lawrence Lovely, VE, also testified at the hearing (R. 132-34). The VE categorized Plaintiff's past work as a babysitter as medium, semiskilled work pursuant to the Dictionary of Occupational Titles (R. 132). In the first hypothetical the ALJ asked the VE whether someone with Plaintiff's age, education, and work experience that had no external limitations but could only perform simple, routine tasks requiring no interaction with the general public, and occasional interaction with supervisors and co-workers could perform Plaintiff's past work (*id.*). The VE responded that such a person could not perform Plaintiff's past work (*id.*). Then, the ALJ asked if

such a person could perform any work in the national economy (*id.*). The VE responded that such an individual could perform the work functions of a hand packager, towel folder, or laundry laborer (R. 132-33). Subsequently, Plaintiff's attorney posed a hypothetical to the VE asking whether any jobs in the national economy existed for an individual who would be off-task at least fifteen percent of the time throughout the workday and would be absent from work more than four day per month (R. 134). Before the VE could respond, the ALJ modified the hypothetical to include whether those limitations would preclude any jobs from being available for the individual. *Id.* The VE answered that either of these limitations would result in no work being available for the individual. *Id.*

### 4.   ALJ's Decision

The ALJ issued her unfavorable decision on October 31, 2018. At step one, the ALJ found Plaintiff was not entitled to DIB because she had engaged in substantial gainful activity ("SGA") in 2012 and there was no evidence of a 12-month period from the alleged onset date of August 9, 2011 and the date last insured for DIB during which Plaintiff did not engage in substantial gainful activity (R. 18). Thus, Plaintiff was not disabled for purposes of her DIB claim (*id.*). For Plaintiff's SSI claim, the ALJ determined that since September 25, 2013, Plaintiff had worked after the application date, but the work activity did not rise to level of substantial gainful activity and thus, the ALJ proceeded to step two (*id.*).

At step two, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, panic disorder, PTSD, and asymptomatic HIV (R. 18).

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments of the relevant Social Security Listings ("Listings") (R. 18). The ALJ found that Plaintiff's HIV did not meet or medically equal any of the listed impairments, specifically, the ALJ

determined that "it does not meet Listing 14.11 because there is no evidence of the requisite central nervous system lymphoma, primary effusion lymphoma, leukoencephalopathy, sarcoma, reduced CD4 counts, BMI of less than 18.5, or multiple hospitalizations within a 12-month period" (R. 19). With respect to Plaintiff's mental impairments, the ALJ determined that they did not meet or equal the criteria of Listings 12.04, 12.06, and 12.15 (R. 19). The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: routine tasks with no interaction with the general public, and occasional interaction with supervisions and coworkers (R. 20).

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a babysitter (R. 23). Lastly, at step five, the ALJ determined that based on Plaintiff's age, education, work experience, and RFC, there are jobs in the national economy that Plaintiff can perform (R. 24). Specifically, Plaintiff can perform jobs like hand packager, towel folder, and laundry laborer (*id.*). Ultimately, the ALJ concluded that Plaintiff had not been disabled since the filing of her SSI application and the date of the decision (R. 25).

## IV. ANALYSIS

Plaintiff raises several grounds for reversal and remanding of the ALJ's decision. Plaintiff contends that the ALJ failed to assign the proper weight to the medical opinions of her treating physicians. Plaintiff also argues that the ALJ applied the wrong law at step three by failing to consider whether Plaintiff met the severe impairment of Listings 14.11(I), 12.04, and 12.15. Lastly, Plaintiff argues that the ALJ erred in questioning the VE, and further claims that she was biased against Plaintiff, which resulted in the ALJ's unfavorable finding that Plaintiff was not disabled.

In opposition, Defendant argues that the ALJ properly considered and weighed the medical opinion evidence in the record. Defendant argues that while the ALJ's opinion did not specifically

mention Listing 14.11(I), the necessary analysis under that specific subsection can be implied from the decision as a whole, and that substantial evidence supports the ALJ's decision regarding the challenged Listings. Defendant also argues that Plaintiff has not met her burden to show that the ALJ was actually biased against her and that such bias affected the outcome of the hearing.

After careful review of the record, the Parties' briefing, and for the reasons discussed below, I recommend that the ALJ's decision be affirmed.

### 1. Weight Accorded to Treating Sources

Plaintiff raises two challenges to the ALJ's treatment of the opinions of treating sources: first, she argues that the ALJ erred in assigning little weight to Dr. Illa-Sanchez's opinions expressed in the 2011 evaluation form. Plaintiff additionally contends that the ALJ erred by failing to discuss or accord weight to opinions contained in Dr. Samuel's 2013 evaluation form and Dr. Illa-Sanchez's 2014 evaluation form.

In determining whether a claimant is disabled, the ALJ evaluates every medical opinion received. *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 749 (11th Cir. 2018). When it comes to weighing medical opinion evidence, an ALJ considers many factors such as the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record. *Id.*; 20 C.F.R. § 404.1527(c). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s), and the claimant's physical or mental restrictions." *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 557 (11th Cir. 2015).

An ALJ must give the opinion of a claimant's treating physician substantial or considerable

weight unless good cause exists not to. *Brock*, 758 F. App'x at 750.  Good cause exists where (1) the treating physician's opinion is not reinforced by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with that physician's own medical records. *Id*. Courts have also allowed the ALJ's assigning of less weight to the opinion of a treating source when the opinions were made outside the relevant time period. *See e.g. McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 (11th Cir. 2020); *Manes v. Comm'r of Soc. Sec.*, No. 8:16-CV-3234-T-36JBT, 2018 WL 1832330, at *7 (M.D. Fla. Mar. 28, 2018).

In addition, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore. *Hunter*, 609 F. App'x at 557. The ALJ is not required to specifically refer to every piece of evidence in her decision, so long as the decision is not a broad rejection, that leaves the district or appellate court with insufficient information to conclude whether the ALJ considered the claimant's medical condition as a whole. *Id.*  So long as the ALJ's articulated reasons for assigning less than substantial weight to a treating physician's opinion are supported by substantial evidence, there is no reversible error. *Id.* at 558. "To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination." *Id.*

### a.  Dr. Illa-Sanchez's 2011 Evaluation Form

Plaintiff has failed to demonstrate that the ALJ erred in assigning little weight to Dr. Illa-Sanchez's opinions in the evaluation form. In 2011, Dr. Illa-Sanchez found that Plaintiff was slightly impaired in the areas of daily activity, moderately impaired in the areas of social functioning, moderately impaired in the areas of task performance and markedly limited in concentration (R. 1339-42). Dr. Illa-Sanchez also opined that Plaintiff's condition resulted in a

complete inability to function independently outside her home (R. 1351). The ALJ assigned little weight to these opinions regarding Plaintiff's limitations, explaining that they were undermined by the fact that Plaintiff had engaged in substantial gainful activity for at least a year after the evaluation (*id.*). The ALJ also explained that little weight was assigned because the opinions were made during a period outside the relevant time period for Plaintiff's claims (*id.*).

Plaintiff does not dispute that she had engaged in substantial gainful activity for a period after the alleged onset date or that the opinions were made in a period outside the relevant time period for both claims. Rather, Plaintiff faults the ALJ for failing to give more weight to Dr. Illa-Sanchez's opinion because she had treated Plaintiff once or twice a month, establishing a clear treating relationship (ECF. No. 21 at 13).

The opinions of Dr. Illa-Sanchez, as a treating source, are entitled to substantial weight, unless good cause exists for not affording them such weight. The ALJ recognized that Dr. Illa-Sanchez was a treating medical source, indeed, she noted as much in the opinion (R. 22). Nonetheless, the ALJ did not err by assigning the opinions in the 2011 evaluation little weight because they were based on a time period outside the relevant time period here (between September 25, 2013, and October 31, 2018). *McCullars*, 825 F. App'x at 691 (affirming ALJ's decision finding claimant disabled and assigning some weight to consulting physician's opinion where the evaluations took place outside the relevant time period); *see also Manes*, 2018 WL 1832330, at *7 (M.D. Fla. Mar. 28, 2018) (affirming ALJ's decision and explaining that the ALJ did not err in assigning little weight to treating doctor's opinion that were made outside the relevant time period).

### b.  Dr. Illa-Sanchez's 2014 Evaluation

Plaintiff also contends that the ALJ erred by wholly ignoring Dr. Illa-Sanchez's opinions

in her June 2014 psychological evaluation of Plaintiff's impairments and resulting limitations because the ALJ cannot reject or ignore a medical opinion without providing a reasoned explanation for doing so (ECF No. 21 at 14).  Defendant responds that even though the ALJ did not articulate a particular weight afforded to Dr. Illa-Sanchez's opinions expressed in the 2014 evaluation, the error is harmless because her opinions therein are not inconsistent with the ALJ's finding, specifically, that Plaintiff had RFC to perform some work (ECF No. 23 at 18 n. 10).

The ALJ erred in not discussing or articulating the particular weight that was given to Dr. Illa-Sanchez's opinions in the 2014 evaluation regarding Plaintiff's mental limitations. *Colon v. Colvin*, 660 F. App'x 867, 870, (11th Cir. 2016). However, based on the record, the error was harmless because those medical opinions were consistent with the ALJ's conclusion that Plaintiff was not so limited as to affect her RFC. *See  Colon,* 660 F. App'x at 870 (finding that the ALJ erred in not stating the particular weight given to a treating source's opinions regarding the claimant's mental limitations but that error was harmless "because those medical opinions were consistent with the ALJ's conclusion that [claimant's] depression was not a severe impairment"); *Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("Although the ALJ did not explicitly state what weight he afforded the opinions of [four doctors], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.").

In the 2014 evaluation, Dr. Illa-Sanchez diagnosed Plaintiff with major depressive disorder and recurrent moderate panic disorder (R. 2221). The evaluation indicated that Plaintiff experienced panic attacks two days per month (notably, an improvement from her finding in 2011), and when stressed, experienced sleep disturbance, difficulty concentrating, feelings of guilt, difficulty interacting with peers, difficulty accepting being under the supervision of others, and

poor attendance (R. 2223). Despite these difficulties, Dr. Illa-Sanchez opined that Plaintiff did not experience any marked limitations in the areas of daily activities, maintaining social functioning or task performance and concentration (R. 2223-24). Notably, Dr. Illa-Sanchez opined that Plaintiff's condition does not result in a complete inability to function independently outside her home (R. 2232). These opinions bolster the ALJ's finding that Plaintiff was only moderately limited in social, concentration, and adaptive deficits caused by her alleged mental impairments, such that her RFC was not affected (R. 22).

Additionally, while the ALJ did not reference the 2014 evaluation, the ALJ did cite to Dr. Illa-Sanchez' contemporaneous treatment notes from the same date of the evaluation. The ALJ found that Dr. Illa-Sanchez's notes on the date of the evaluation indicated a "largely unremarkable" mental status examination (R. 22). Indeed, in her notes, Dr. Illa-Sanchez indicated that Plaintiff's symptoms were intermittent, and only mild to moderate in severity (R. 2304). Critically, the notes indicate that Plaintiff's symptoms were not interfering with daily functioning, safety to self or others, and not causing self-neglect (*id.*). These notes are consistent with the opinions in the accompanying evaluation. *See Gaffney o/b/o J.K. v. Saul*, No. 8:18-CV-1703-T-AAS, 2019 WL 4238107, at *4 (M.D. Fla. Sept. 6, 2019) (finding that the ALJ's failure to articulate the weight given to a treating source's opinion in one document was harmless where the ALJ discussed that source's treatment notes, which were consistent with the ALJ's ultimate RFC finding).

Moreover, the ALJ's conclusion regarding Plaintiff's mental limitations and RFC is supported by substantial evidence. The ALJ found that the mental status examinations showed no evidence of disordered thoughts (R. 21). The ALJ noted that in 2012, Plaintiff underwent a psychological evaluation with general personality assessment, which indicated that Plaintiff denied any significant medical conditions, although she feels anxious and depressed (R. 1439-40).

Plaintiff's cognitive functions were intact and showed good short-term memory; and no deficits in remote memory were noted. Plaintiff displayed "positive personality traits such as her very cooperative, good verbal communication skills, respectful, and apparently sincere presentation of self." (R. 1443). Plaintiff had borderline intellectual functioning, as she experienced difficulties in problem solving, but not severe enough to be consistent with a learning disability (R. 1444).

The ALJ also relied on a psychological evaluation of Plaintiff by Dr. Samuel dated March 27, 2013, which indicated that Plaintiff presented as cooperative and her thought process was goal oriented with no evidence of delusional thought disorder (R. 21, 1424). Later that year, Plaintiff was again evaluated by Dr. Illa-Sanchez, Plaintiff's treating psychiatrist, who observed that Plaintiff was alert and oriented, as well as cooperative, she denied any suicidal thoughts or plans, or any recent hospitalization due to her anxiety and depression (R. 1927). Plaintiff showed only mild to moderate impairments in memory, attention and concentration, and speed processing (R. 1928). Critically, Dr. Illa-Sanchez noted that "[t]hese impairments are not interfering with everyday functioning" (*id.*). Because the ALJ's conclusions regarding Plaintiff's limitations and RFC is not affected by the failure to state what weight she gave Dr. Illa-Sanchez's medical opinions in the 2014 evaluation, the error is harmless, and reversal is not warranted.

### c. Dr. Samuel's 2013 Evaluation

Plaintiff argues that the ALJ committed reversible error by completely disregarding Dr. Samuel's opinions in her 2013 psychological evaluation regarding Plaintiff's impairments and resulting limitations. Defendant responds that Plaintiff's argument fails because the ALJ did actually consider Dr. Samuel's evaluation, although not identifying it by name, and summarized her clinical findings as examples of treatment notes showing few significant mental status abnormalities (ECF No. 23 at 20). Defendant also avers that the ALJ was not required to defer to

16

or assign substantial weight to Dr. Samuel's opinion, as she was a one-time examiner and not a treating physician (*id.*).

Defendant's characterization is accurate. Although the ALJ did not specifically identify Dr. Samuel by name, the ALJ summarized the 2013 evaluation in dispute (R. 21). The ALJ noted that Dr. Samuel's evaluation showed few significant mental status mental abnormalities as Plaintiff presented as cooperative with normal speech and communicative abilities (*id.*). Indeed, the evaluation notes indicate that Plaintiff was cooperative during the interview and her thought process was goal oriented with no evidence of a delusional thought disorder (R. 1424).

Moreover, while Dr. Samuel's evaluation noted that Plaintiff experienced some significant limitations in concentration and establishing personal relationships, the record is at best inconsistent regarding Plaintiff's limitations in these areas, and substantial evidence exists to support the ALJ's finding that Plaintiff was only moderately limited in those areas. As the ALJ noted in December 2013, Dr. Illa-Sanchez, Plaintiff's treating psychologist, documented that Plaintiff was alert and fully oriented, demonstrated good attention and concentration (R. 22, 1962). Those treatment notes indicate that although Plaintiff reported experiencing panic attacks and intermittent depressed moods, her symptoms had improved from the previous month (R. 22, 1962). Plaintiff continued to attend classes and care for her children despite her symptoms (*id.*). In June 2014, the ALJ noted, Dr. Illa-Sanchez reported that despite Plaintiff's allegations of depression and anxiety, her mental examinations were unremarkable. (R. 22, 2304). Indeed, the treatment notes indicate that Plaintiff's symptoms of depression and PTSD were intermittent, and only mild to moderate in severity and were not interfering with daily functioning, safety to self or others, and not causing self-neglect (R. 2304.). Thus, the order demonstrates that the ALJ considered Plaintiff's medical conditions and resulting limitations as a whole. *See Hunter*, 609 F. App'x at

558. Moreover, to the extent that ALJ erred by failing to state with particularity the weight assigned to Dr. Samuel's 2011 opinions, the error is harmless because it did not affect the ALJ's ultimate determination. *Id*. Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, as the medical records, particularly medical records from Plaintiff's treating physician, demonstrate that despite Plaintiff's impairments and generally moderate limitations, she is still capable of performing some work.

### 2. Substantial Evidence Supports the ALJ's Finding that Plaintiff Does Not Meet the Requirements of Listings 14.11(I), 12.04, and 12.15

Plaintiff argues that the ALJ erred at step three by failing to consider whether Plaintiff's reported HIV-related physical and mental manifestations (including anxiety, PTSD, and various gynecological conditions) met the requirements of Listings 14.11(I), 12.04, and 12.15. With respect to her first challenge, Plaintiff contends that the ALJ erred at step three by not considering whether Plaintiff's alleged symptoms satisfied the requirements of Listing 14.11(I), and that such finding cannot be implied from the ALJ's finding that Plaintiff did not satisfy the other sections of Listing 14.11 (ECF No. 24 at 3).

Defendant contends that Plaintiff has not met her burden of establishing that she met any section of Listing 14.11. Defendant argues that the ALJ's analysis of Listing 14.11, although not explicitly discussing section (I), is sufficient because the ALJ is not required to make explicit findings regarding whether a claimant's impairments meet a Listing since such finding can be implied from the ALJ's decision. Defendant argues that in this case, the ALJ's finding that Plaintiff did not satisfy the requirements of (I) was implied by the ALJ's continuation to steps four and five and is supported by substantial evidence (ECF No. 23 at 21-22).

At the third sequential step, the ALJ must determine whether the claimant has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart

P, Appendix 1. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). Thus, "Appendix 1 must be considered in making a disability determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).  The claimant bears the burden of demonstrating that an impairment meets or equals a listed impairment. *Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 970 (11th Cir. 2014). The ALJ's finding as to whether a claimant does or does not meet a listed impairment may be implied from the record. *Hutchison v. Bowen,* 787 F.2d 1461, 1463 (11th Cir.1986). Furthermore, while the ALJ must consider the Listings in making its disability determination, the ALJ is not required to mechanically recite the evidence leading to her determination. *Id.*

In *Hutchinson*, the Eleventh Circuit held that the ALJ can implicitly conclude that a claimant's condition did not meet a listing without reciting all the evidence leading to that determination by proceeding to the fourth and fifth steps of the analysis. *Hutchinson*, 787 F.2d at 1463. Later, in *Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 970 (11th Cir. 2014), the Eleventh Circuit clarified that an ALJ's implicit finding regarding whether a claimant's conditions meet a listing must also be supported substantial evidence. More recently, in *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 842 (11th Cir. 2019), the Eleventh Circuit reaffirmed these principles, holding that the ALJ's findings that the claimant did not meet the requirements of the relevant Listings for cirrhosis of the liver and hepatic encephalopathy could be implied because the ALJ proceeded to steps four and five of the sequential analysis; and critically, the ALJ's decision was supported by substantial evidence. *Id.* at 842-43.

In some instances, courts have declined to guess whether the ALJ made an implied decision relating to a listing where the ALJ failed to consider at all whether a claimant met the requirements for a specific listing and cited no evidence to support her conclusion. *See Armstrong v. Comm'r of Soc. Sec.*, 546 F. App'x 891, 895 (11th Cir. 2013) (finding the ALJ committed reversible error

because "[a]lthough the ALJ found Armstrong's AS was a severe impairment, the ALJ did not discuss specifically Listing 14.09C, which applies to AS, and she did not explain what evidence showed Armstrong did not meet that listing."); *see also See Stroman v. Astrue*, No. 08-cv-22881, 2009 WL 3669640, at *2 (S.D. Fla. Nov. 4, 2009) (remanding where ALJ "failed to consider at all" whether Plaintiff met listing for immune system disorders, and thus no inference could be drawn from ALJ's silence where there was "nothing to review").

Courts have also declined to infer a finding that a claimant met a Listing where the substantial evidence would not support such a finding. For example, in *Williams v. Berryhill*, No. 3:17-CV-790-J-39JBT, 2018 WL 6620507, at *1 (M.D. Fla. Sept. 12, 2018), the court reversed and remanded the ALJ's finding that the claimant did not meet the relevant Listing. There, the Listing required a showing of extensive "skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months," and the ALJ found that claimant did not meet the Listing because "the evidence of record shows only one axilla is involved rather than two as required by the listing." *Id*. The court explained that the ALJ erred because the record showed claimant had skin lesions in alternative sites, which the ALJ did not mention in his analysis of the Listing. *Id.*

Here, the ALJ's finding that Plaintiff did not satisfy Listing 14.11(I) can be implied because the ALJ found that Plaintiff did not satisfy Listing 14.11 in its entirety and continued to the final steps of the sequential analysis.[1] *Hutchinson*, 787 F.2d at 1463. Moreover, the ALJ's finding that Plaintiff had not demonstrated that she met Listing 14.11(I) is supported by substantial evidence.

---

[1] The ALJ found that "[t]he claimant's HIV does not meet or medically equal any of the listed impairments. Specifically, it does not meet Listing 14.11 because there is no evidence of the requisite central nervous system lymphoma, primary effusion lymphoma, leukoencephalopathy, sarcoma, reduced CD4 counts, BMI of less than 18.5, or multiple hospitalizations within a 12–month period." (R. 19). Plaintiff does not challenge the ALJ's consideration of subsections (A) through (H) of Listing 14.11.

*Prince*, 551 F. App'x at 970.

Subsection (I) requires Plaintiff to show a medical diagnosis of HIV and evidence demonstrating:

> A. Repeated (as defined in 14.00I3)[2] manifestations of HIV infection, including those listed in 14.11A-H, but without the requisite findings for those listings (for example, Kaposi sarcoma not meeting the criteria in 14.11E), or other manifestations (including, but not limited to, cardiovascular disease (including myocarditis, pericardial effusion, pericarditis, endocarditis, or pulmonary arteritis), diarrhea, distal sensory polyneuropathy, glucose intolerance, gynecologic conditions (including cervical cancer or pelvic inflammatory disease, see 14.00F7), hepatitis, HIV-associated dementia, immune reconstitution inflammatory syndrome (IRIS), infections (bacterial, fungal, parasitic, or viral), lipodystrophy (lipoatrophy or lipohypertrophy), malnutrition, muscle weakness, myositis, neurocognitive or other mental limitations not meeting the criteria in 12.00, oral hairy leukoplakia, osteoporosis, pancreatitis, peripheral neuropathy) resulting in significant, documented symptoms or signs (for example, but not limited to, fever, headaches, insomnia, involuntary weight loss, malaise, nausea, night sweats, pain, severe fatigue, or vomiting) <u>and</u> one of the following at the marked level:
> 1. Limitation of activities of daily living;
> 2. Limitation in maintaining social functioning; or
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 14.11.

Plaintiff contends that the ALJ failed to consider evidence that she experienced gynecological infections, PTSD, depression, and anxiety and whether these symptoms met the requirements of subsection (I). Here, the ALJ expressly considered Plaintiff's gynecological infections. The ALJ cited to Dr. Bosa-Osario's treatment notes to determine that Plaintiff reported no physical disabilities or interruption in her daily activities due to her HIV or related symptoms (R. 23). A closer look at Dr. Bosa-Osario's notes reveals that while Plaintiff did have abnormal

---

[2] "Repeated" means that the manifestations occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 week."

pap smears indicating high risk HPV, upon additional screening no cancerous tumors were reported (R. 987, 1525, 1572, 2203).[3]

Plaintiff also relies on records outside the relevant time period of 2013 through 2018 to support her argument (R. 992, 1192, 1525). Even if the ALJ had discussed those records, they do not show that Plaintiff suffered from "repeated" gynecological issues that would have satisfied 14.11(I). For example, while Plaintiff was diagnosed with bacterial vaginosis in 2009 (R. 1192-94) and then later in 2012 (R. 1525), the recurrence of this infection is not repeated as defined in 14.00I3. Additionally, contemporaneous treatment notes indicate that Plaintiff did not have high risk HPV, her cervix appeared normal, and no vaginal or rectal lesions were identified (R. 1192-94).

Moreover, the ALJ's finding that Plaintiff did not meet the requirements of Listing 14.11 is supported by substantial evidence. First, as Plaintiff conceded at the hearing, Plaintiff had not advanced evidence in support of disability related to her HIV infection and her counsel further conceded that her HIV infection was asymptomatic (R. 135). This contention is supported by medical records cited by the ALJ. In 2013 and 2014, Plaintiff reported that she was exercising and not experiencing any physical issues related to HIV (R. 23, 1945, 2201). A 2017 treatment note indicated that Plaintiff's last viral count (in 2016) was undetectable (R. 23, 2844). The ALJ relied upon Plaintiff's statements (made in 2018) that she was HIV negative in 2015 (R. 23, 2844). The ALJ also considered recent medical records from Bureau of Prisons in 2018, that Plaintiff reported

_____

[3] Plaintiff cites to *Causey v. Berryhill*, No. 17-24572-CIV (ECF No. 24) (S.D. Fla. Mar. 26, 2019) in support of her argument that the ALJ committed reversible error by not considering subsection (I). However, that case is distinguishable in that the ALJ did not consider the HIV Listing <u>at all</u> yet the record evidence indicated that the claimant was afflicted by severe and repeated infections related to her HIV that resulted in hospitalizations and blood transfusions. The record also indicated that the claimant suffered from lesions and malignant growths in her genitalia and reproductive system, resulting in surgical procedures and hospitalizations. Here, the ALJ's determination that Plaintiff did not satisfy Listing 14.11 is supported by substantial evidence.

on multiple occasions that she had never had an HIV-related illness (R. 23, 2330, 2331, 2349, 2361, 2372, 2469).

Nor did Plaintiff advance evidence to satisfy the second part of subsection (I), which requires a showing that Plaintiff suffered from marked limitations to her daily life activities, social functioning, or concentration and completion of tasks (R. 21-23). Indeed, Dr. Illa-Sanchez, Plaintiff's treating psychiatrist, offered opinions indicating only mild to moderate limitations due to Plaintiff's claimed impairments. In September 2013, Dr. Illa-Sanchez noted that Plaintiff showed only mild to moderate impairments in memory, attention and concentration, and speed processing and that "[t]hese impairments are not interfering with everyday functioning" (R. 1928). In June 2014, Dr. Illa-Sanchez indicated that Plaintiff had no limitations in the activities of daily living (R. 2223); she also noted that Plaintiff did not experience any marked limitations in the area of maintaining social functioning or task performance and concentration (R. 2224). Dr. Illa-Sanchez reported that patient's condition did not result in a complete inability to function outside the area of the home (R. 2232).

Plaintiff also challenges the ALJ's determination that Plaintiff's mental impairments do not meet the requirements of Listings 12.04 (depressive, bipolar, or related disorders) or 12.15 (trauma and stressor-related disorders) (ECF No. 21 at 16-18). Both Listings require that Plaintiff show extreme limitation of one, or more marked limitation in two of the following areas: (1) understand, remember, or apply information; (2) interacting with others; or (3) concentration, persistence, or maintaining pace. *See* Listings 12.04 and 12.15; C.F.R. § 404.1524, Appendix 1. As discussed above, substantial evidence supports the ALJ's finding that Plaintiff is only moderately limited in those areas and thus did not satisfy the challenged Listings. Accordingly, Plaintiff's Motion should be denied on this ground.

3. **The ALJ Did Not Pose an Incomplete Hypothetical to the VE**

Plaintiff challenges the ALJ's finding that she could perform other work (apart from babysitting) in the national economy because the ALJ presented the VE with incomplete hypothetical questions, which failed to account for Plaintiff's difficulties in social interactions with supervisors and coworkers, concentration and pace, and would miss two to four days of work every month (ECF No. 21 at 19-20).

At step five, and after assessing the claimant's RFC, the ALJ must determine whether a significant number of jobs exist in the national economy that the claimant can perform. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). A claimant who can adjust to other employment is not disabled. *Id.* The ALJ may reach this determination by relying on the testimony of a VE. *Id.* "When relying upon the testimony of a vocational expert, the ALJ must pose hypothetical questions to the vocational expert that encompass all of the claimant's impairments. If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Id.*

Here, the ALJ posed the following hypothetical to the VE:

ALJ: Assume an individual the age, education, and work experience of this claimant. Assume that this individual has no exertional limitations. Assume that this individual can perform simple, routine tasks requiring no interaction with the general public, and occasional interaction with supervisors and coworkers. Given this hypothetical, could such an individual perform the past work as a babysitter?
VE: No, your honor.
ALJ:  Is there any other work that such an individual could perform?
VE: Yes.

(R. 131-32).  The ALJ's hypothetical to the VE accounted for Plaintiff's moderate difficulties in maintaining concentration and pace, by limiting her to simple and routine tasks. Likewise, the ALJ considered Plaintiff's social limitations and restricted the hypothetical to jobs that would involve

little interaction with supervisors and the general public. *See Jacobs*, 520 F. App'x at 951 (affirming ALJ's decision and approving hypothetical to the VE because the questions accounted for the claimant's difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment).

Moreover, although the ALJ did not ask the VE to consider that Plaintiff may be absent form work two to four days, the ALJ allowed Plaintiff's counsel to include that limitation in the hypothetical: "If you were to assume somebody would be off-task at least 15 percent of the time throughout the workday, and would be absent from work more than four days per month, would there be jobs in the national economy for that individual?" (R. 134). The VE answered that those limitations would not preclude a claimant from engaging in some kind of work (*id.*). Thus, even if the VE had been asked to consider that limitation, it would not have affected the finding that Plaintiff could perform some work in the national economy.

### 4. The ALJ Did Not Demonstrate Bias

Lastly, Plaintiff argues that the ALJ rendered an unfavorable disability decision because she was biased against her as a result of her felon status. In reviewing claims of bias, courts must presume that the ALJ in question is unbiased. *Kirby v. Soc. Sec. Admin., Comm'r*, 819 F. App'x 828, 835 (11th Cir. 2020). "Rebutting this presumption requires a claimant to show a 'conflict of interest or some other specific reason for disqualification.'" *Id.* at 835. "Bias sufficient to disqualify a judge must stem from extrajudicial sources and must be focused against a party to the proceeding unless a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Id.* "Judicial rulings, routine administrative efforts, and ordinary admonishments (whether or not legally supportable) to counsel and witnesses that occur during the course of judicial proceedings that neither rely upon knowledge acquired

outside of such proceedings nor display a deep-seated and unequivocal antagonism rendering fair judgment impossible are inadequate grounds for recusal." *Meade v. Comm'r of Soc. Sec.*, 807 F. App'x 942, 945 (11th Cir. 2020).

As evidence of bias, Plaintiff points to the following statements by the ALJ at the beginning of the administrative hearing:

> In review of the evidence, I feel like it's important that I raise another issue, and in fact, an admonishment at this point. The record documents several instances in which the claimant has not been truthful. The record also documents that the complainant has been convicted and was recently released from prison for theft of government property. So here she is today making a claim for government benefits on what, I would suggest, is rather weak evidence. So I'm assuming that she's on probation and those terms of probation would subject her to further prison time, should she lie under oath, or seek to appropriate other government funds.  So, I am going to suggest that you take a moment in the lobby to discuss this with your claimant and make sure that she wishes to proceed today, and to make sure that when she proceeds that she is very careful of her testimony that she not commit perjury because that would be a dreadful circumstance for her.

(R. 105-06). Plaintiff, citing to *Griffin v. Weinberger*, 492 F.2d 969, 970 (5th Cir. 1974) and *Webb v. Texas*, 409 U.S. 95, 97 (1972), argues that the ALJ is biased against her as demonstrated by her admonishment and warning against perjury, statements which Plaintiff contends were threatening and coercive. Plaintiff's reliance on *Griffin* is misplaced. In *Griffin*, the court found no merit to claimant's bias claim because the ALJ's admonishment against perjury "did no more than lay out accurately the consequences of testifying falsely."[4] *Griffin*, 492 F.2d at 970. Here too, ALJ's

---

[4] In that case the ALJ admonished Griffin making the following statements: Before he began his testimony, Griffin was admonished in the following language:

> Mr. Griffin, I want you to clearly understand the import of what is about to occur. You have taken an oath to tell the truth. There are certain penalties for not telling the truth provided in the United States Criminal Code. If you do not tell the truth under oath, it will be perjury, and you may be liable to prosecution. Now, perjury is the knowing misrepresentation under oath of a material fact. In plain words, if you lie about the date of your birth and any of the other circumstances surrounding it, you may be liable to prosecution.

*Griffin*, 492 F.2d at 970 n.1.

admonition did no more than caution Plaintiff of the consequences of providing false testimony, particularly where it could have impacted the terms of Plaintiff's supervised release. *Id*.

Nor does *Webb* require reversal of the ALJ's decision. *Webb* involved a criminal proceeding, where the criminal defendant's due process rights under the Fourteenth Amendment were violated. *Webb*, 409 U.S. at 353. There, the trial judge admonished the defense's only witness by stating: "you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the likelihood (sic) is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on…" *Id.* at 352. The trial judge's warning was so stern as to deter the witness from testifying.  On appeal the Court found that such statements demonstrated bias and critically, deprived the defendant of any opportunity to present his defense to the jury. *Id*.

Here, the ALJ did not deter Plaintiff from testifying in support of her case. On the contrary, the ALJ permitted Plaintiff to testify regarding her symptoms and their limitations in her personal and work life. *See McCrea v. Astrue*, 407 F. App'x 394, 397 (11th Cir. 2011) (affirming ALJ's decision and denying bias claim where despite the ALJ's error, the ALJ permitted the claimant to testify about his mental impairments and did not mention claimant's drug use in the written opinion). Additionally, the ALJ did not say she expected Plaintiff to lie under oath, rather, in light of Plaintiff's inconsistent statements in the record, the ALJ warned Plaintiff of possible adverse consequences and advised her representative to discuss those consequences with Plaintiff. *Griffin*, 462 F.2d at 970 (distinguishing *Webb* and determining that reversal was not necessary under the circumstances because "Griffin proceeded to testify fully after the admonition. Furthermore, unlike the judge in *Webb*, the administrative law judge here did not imply that he expected Griffin to

lie.").

Plaintiff cites to *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995), in support of her proposition that the ALJ improperly questioned Plaintiff regarding her criminal charges and this deprived her of a fair hearing (ECF No. 21 at 12). Plaintiff's reliance on *Ventura* is misplaced. There, the court held that the claimant had not been afforded a fair hearing before the first ALJ and ordered a new hearing before a new ALJ. *Ventura*, 55 F.3d at 905. The ALJ in that case did not question the claimant about prior criminal history, rather, the ALJ erred by continuously interfering with the representative's introduction of evidence of the claimant's back pain. *Id.* at 902-03. The ALJ also interrupted the claimant's testimony regarding his back pain. *Id.* at 903. Here, Plaintiff cites to no such interruptions that affected Plaintiff's ability to present evidence in support of her claim. Indeed, the ALJ permitted the Plaintiff's representative to question her, without interruptions, and only after the representative was done questioning Plaintiff did the ALJ ask Plaintiff about her condition, work experience, and criminal history.

Lastly, Plaintiff argues that the ALJ erred by asking Plaintiff if she would like to continue the hearing when Plaintiff indicated that she was experiencing a panic attack (R. 127).[5] Plaintiff cites no authority as to how the ALJ's questioning or offer to continue the hearing amount to bias against Plaintiff or prejudiced Plaintiff. For these reasons, I recommend that Plaintiff's Motion be denied on this ground.

## V.    RECOMMENDATION

The undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Motion for Summary Judgment be **GRANTED**, and that the ALJ's

---

[5] Plaintiff contends that the ALJ did not permit her to get a drink of water when she was experiencing a panic attack (ECF No. 21 at 11). The record, however, reveals that the ALJ indicated that she could get a drink outside of the court room (R. 127).

decision be **AFFIRMED.**

A party shall serve and file written objections, if any, to this Report and Recommendation with Ursula Ungaro, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** this 16th day of December in Miami, Florida.

_____
LAUREN F. LOUIS
**UNITED STATES MAGISTRATE JUDGE**